**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Mark Garris,            Case No.     3:11 CV 2538

    Plaintiff

    v.                **ORDER**

Commissioner of Social Security,

    Defendant

This is an appeal from Magistrate Judge George J. Limbert's Report and Recommendation affirming the Commissioner of Social Security's denial of supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381. (Doc. 18).

Pending is plaintiff's objection to the Magistrate Judge's Report and Recommendation. (Doc. 19).

Plaintiff argues the Administrative Law Judge (ALJ) erred by not: 1) finding his mental conditions to be a severe impairment; and 2) addressing a report by his treating physician.

For the reasons that follow, I reject plaintiff's arguments and adopt the Magistrate Judge's report and recommendation in full.

**Factual Background**

Garris filed for SSI and DIB on April 30, 2007.[1] The agency denied Garris's applications initially and on reconsideration. Garris then requested a hearing before an ALJ, which was held on January 11, 2010. At the hearing, a vocational expert (VE) testified that a hypothetical person with Garris's limitations could find work as an outside deliverer.

The ALJ issued a decision on February 10, 2010. The ALJ found that: 1) Garris's arthritis is a "severe" impairment; but 2) Garris's other impairments, including his mental health conditions, are non-severe impairments.

The ALJ further found that Garris can perform light work with two exceptions: 1) he can only sit up to six hours in an eight-hour work day; and 2) he cannot stand or walk for longer than forty-five minutes at one time.

After stating Garris's functional limitations, the ALJ found that Garris could perform his past relevant work as a pizza deliverer.

**Medical History**

The relevant medical history in this case concerns Garris's documented affective and personality disorders.

The record contains a treatment log and two reports recorded by Garris's treating physician, Dr. Satwant Gill.

---

[1] Garris first filed applications for SSI and DIB on August 28, 2003. The agency denied his applications initially and on reconsideration. He requested a hearing before an ALJ, who denied his applications on February 27, 2007. The Federal District Court upheld the ALJ's decision on November 26, 2008. Garris did not appeal.

In his June 30, 2008 report, Dr. Gill opined that plaintiff suffered from bipolar disorder and would be unemployable for a period of nine to twelve months. In his April 15, 2009 report, Dr. Gill stated that medication was effectively treating Garris's symptoms and that Garris would be unemployable for a period of twelve months or more. In addition, Dr. Gill also noted that Garris was moderately limited in various areas of work-related functioning, including his ability to:

- Understand, remember, and carry out detailed instructions;
- Maintain attention and concentration for extended periods;
- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Work in coordination with or proximity to others without being distracted by them;
- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Accept instruction and respond appropriately to criticism from supervisors;
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- Respond appropriately to changes in the work setting.

Dr. Gill's treatment notes from January, 2008, through November, 2009, show the prescribed medications were effectively treating Garris's behavioral disorder. More specifically, the treatment notes following Dr. Gill's second report show that Garris no longer reported mood swings, depression, anger, or irritability and was not experiencing any side effects from his medications.

Overall, the notes show that Garris's mental condition stabilized after beginning his medication. Specifically, the notes state that Garris showed no signs of lability of mood, delusions, or suicidal or homicidal ideations.

**Standard of Review**

This court exercises jurisdiction over the final decision of the Commissioner under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). In conducting judicial review, I must affirm the Commissioner's conclusions if the Commissioner applied the correct legal standards and made findings of fact supported by substantial evidence. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (*citing Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 833 (*citing Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992)). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Case v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**Discussion**

**A. The ALJ's Step Two Determination Was Proper**

The Social Security Administration has established a five-step sequential process an ALJ must follow in making a benefit determination. An ALJ must consider whether the claimant:

> 1) has engaged in substantial gainful activity (20 C.F.R. §§ 404.1520(b), 416.920(b) (1992));
>
> 2) has a "severe impairment"(20 C.F.R. §§ 404.1520, 416.920(c) (1992));
>
> 3) has an impairment which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 416.920(d) (1992));
>
> 4) is capable of performing the kind of work he or she has done in the past (20 C.F.R. §§ 404.1520(e), 416.920(e) (1992)); or

>5) can perform other work with his or her relevant limitations, considering factors including age, education, past work experience and residual functional capacity (20 C.F.R. §§ 404.1520 (f), 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1993).

If nonsevere impairments are considered in conjunction with severe impairments for the purpose of subsequent steps, the failure to find one specific impairment to be severe at step two is not a reversible error. *See Maziarz v. Sec'y of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987)*; see also Anthony v. Astrue*, 266 Fed. App'x. 451, 457 (6th Cir. 2008) (unpublished disposition) (where the court found that once an ALJ finds a severe impairment at step two, whether or not other impairments should have been considered "severe" at this step is legally irrelevant).

Garris argues that the ALJ erred in determining that his affective and personality disorders are not "severe impairments." Garris further argues the ALJ failed to consider his mental impairments beyond step two of her sequential evaluations. The Magistrate Judge stated the ALJ's failure to find Garris's mental disorders to be severe impairments was harmless error. This is so, according to the Magistrate Judge because the ALJ: 1) found Garris's arthritis to be a severe impairment; and 2) proceeded to consider the functional limitations Garris's mental impairments pose in the later parts of her analysis. *See Anthony*, 266 Fed. Appx. at 457; *Maziarz,* 837 F.2d at 244 (6th Cir. 1987) (stating that, once an ALJ finds one severe impairment, any failure to identify other impairments as severe is "legally irrelevant").

I agree that the ALJ's failure to find Garris's mental impairments to be severe constituted harmless error. At step two, the ALJ found Garris's arthritis to be a severe impairment, and then proceeded properly to consider the functional limitations caused by Garris's mental impairments in the later steps of her analysis. She referenced Dr. Gill's treatment notes during the fifth step of the

sequential evaluation when determining Garris's RFC. Specifically, she noted that Garris's mental health symptoms were being effectively controlled by his medication.

Accordingly, I agree with the Magistrate Judge that the ALJ's failure to find Garris's mental conditions to be severe impairments constitutes harmless error.

### B. The ALJ Did Not Violate the Treating Physician Rule, 20 C.F.R. §§ 416.927(c)(2)

An ALJ must give a treating source's opinion on the nature and severity of a claimant's impairment controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2);[2] *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the ALJ decides not to accord the opinion controlling weight, the regulation requires the ALJ to "give good reasons" explaining their determination. SSR 96-2p; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ must consider the length, nature, and extent of the treatment relationship, the frequency of examination, how well supported the opinion is by medical evidence, and the consistency of the opinion with the overall record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

---

[2] Throughout the record, the parties cite to 20 C.F.R. §§ 404.1527(d), 20 C.F.R. §416.927(d). However, effective August 24, 2012, the regulation discussing the treating physician rule is 20 C.F.R. §§ 404.1527(c), 20 C.F.R. §416.927(c).

The "good reasons" requirement ensures that the claimant and the reviewing courts are able to understand the ALJ's determination of their case. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544-55).

Generally , if an ALJ violates the treating physician rule, I must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

However, if the Commissioner's explanation satisifies the rule's purpose of providing meaningful review, a technical violation may be excused. *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). More particularly:

> [T]he procedural protections at the heart of the rule may be met when the "supportability" of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. Thus the procedural rule is not a procrustean bed, requiring arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.

*Id.* (citations omitted).

Garris argues that, in failing to mention Dr. Gill's 2009 report, the ALJ violated the treating physician rule. He contends the ALJ: 1) failed to provide specific reasons for discounting Dr. Gill's report, and 2) supplanted her own opinion for that of a medical expert without relying on any evidence in the record.

The Magistrate Judge concluded that the ALJ did not violate the treating physician rule because she indirectly attacked the report's findings by crediting Dr. Gill's later treatment notes. Specifically, the Magistrate Judge found that by discussing Dr. Gill's treatment notes – which post-dated his 2009 report – the ALJ indirectly undermined Dr. Gill's 2009 report.

7

The ALJ should have directly addressed the qualitative functional limitations Dr. Gill identified in the 2009 report. I find, however, that the ALJ's failure in this regard was harmless error. The same doctor saw Garris four times after completing the 2009 report. After each visit, Dr. Gill concluded in his treatment notes that Garris's medication effectively controlled his mental illness. In determining Garris's RFC, the ALJ discussed the treatment notes and emphasized Dr. Gill's continued opinion that the prescribed medication was effectively controlling Garris's symptoms.

The ALJ failed to state explicitly why she did not consider one out of a series of reports issued by Garris's treating physician. On its face, this constitutes a violation of the treating physician rule. However, the ALJ's subsequent explanation constituted an indirect attack of the omitted report. Her explanation that she credited Dr. Gill's opinion that Garris's medicines were effectively controlling his mental symptoms suffices to allow Garris and this court to conduct meaningful review. Accordingly, I find the violation of the treating physician rule to be harmless error.

## Conclusion

For the foregoing reasons, it is

ORDERED THAT:

Magistrate Judge Limbert's Report and Recommendation be, and the same hereby is ADOPTED as the order of this court.

The Clerk shall enter judgment accordingly.

So ordered.

/s/  James G. Carr
Sr. United States District Judge